UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS



BLUE SPIKE, LLC,

    *Plaintiff*,

v.

DISH NETWORK CORPORATION,
DISH NETWORK L.L.C., AND DISH
NETWORK SERVICE L.L.C.,

    *Defendants*.

Case 6:18-cv-333

JURY TRIAL DEMANDED

## **ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Blue Spike, LLC ("Blue Spike" or "Plaintiff") files this complaint against the above-named Defendants (collectively "Defendant" or "DISH"), alleging 17 counts of infringement of the following 12 Patents-in-Suit:

1. Reissued U.S. Patent RE44,222E1, titled "Methods, systems and devices for packet watermarking and efficient provisioning of bandwidth," (the '222 Patent).

2. Reissued U.S. Patent RE44,307, titled "Methods, systems and devices for packet watermarking and efficient provisioning of bandwidth," (the '307 Patent).

3. U.S. Patent 7,287,275B2, titled "Methods, systems and devices for packet watermarking and efficient provisioning of bandwidth" (the '275 Patent).

4. U.S. Patent 8,473,746, titled "Methods, systems and devices for packet watermarking and efficient provisioning of bandwidth" (the '746 Patent).

5. U.S. Patent 8,224,705, titled "Methods, systems and devices for packet watermarking and efficient provisioning of bandwidth" (the '705 Patent).

6. U.S. Patent 7,475,246, titled "Secure personal content server" (the '246 Patent).

7. U.S. Patent 8,739,295B2, titled "Secure personal content server" (the '295 Patent).

8. U.S. Patent 9,021,602, titled "Data Protection and Device" (the '602 Patent).

9.      U.S. Patent 9,104,842, titled "Data Protection and Device" (the '842 Patent).

10.      U.S. Patent 9,934,408, titled "Secure personal content server" (the '408 Patent).

11.      U.S. Patent 7,159,116B2, titled "Systems, methods and devices for trusted transactions" (the '116 Patent).

12.      U.S. Patent 8,538,011B2, titled "Systems, methods and devices for trusted transactions" (the '011 Patent).

*See* Exhibits 2–13.

## NATURE OF THE SUIT

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.      Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the exclusive license of the Patents-in-Suit, and has ownership of all substantial rights in the Patents-in-Suit, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

3.      On information and belief, Defendant Dish Network Corporation is a corporation established under the laws of the State of Nevada, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112. Defendant can be served through its registered agent, CSC Services of Nevada, Inc., located at 2215-B Renaissance Drive, Las Vegas, Nevada 89119.

4.      On information and belief, Defendant Dish Network L.L.C. is established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112. Defendant can be served through its registered

agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

5.      On information and belief, Defendant Dish Network Service L.L.C. is established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112. Defendant can be served through its registered agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

6.      This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

7.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)–(c) and 1400(b) because Defendant has a regular and established place of business in this District. *See*, 28 U.S.C § 1400 (b); *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017); *In re Cray Inc.*, 871 F.3d 1355, 1360–4 (Fed. Cir. 2017).

8.      The Court has personal jurisdiction over Defendant and venue is proper for the following reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District by its offering of infringing products and services and providing infringing products and services in the homes and businesses in this District; (2) Defendant regularly does business or solicits business in this District by its offering of infringing products and services and providing infringing products and services in the homes and businesses, thereby creating a physical, geographical location in the district from which the business

of Defendant is carried out, including its preferred retailers in this District, including Single Source Satellite located in Plano, Texas and Solis Satellite and Communications in Longview, Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue by its offering of infringing products and services and providing infringing products and services in the homes and businesses of this District; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with this District and should reasonably expect to be haled into court here by its offering of infringing products and services and providing infringing products and services in the homes and businesses in this District. *See* Exhibit 1 (screen shot of Defendant offering "DISH TV In Tyler, Texas" for Tyler, Texas); Exhibits A and B (screen shots of retail locations in Plano and Longview, Texas).

## FACTUAL BACKGROUND

9.      Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

10.      Blue Spike is a company focused on innovation with research and development. Blue Spike does not make a service that competes directly with Defendant, but Blue Spike has licensed its pioneering patents to competitors of Defendant.

11.      Blue Spike is a practicing entity, just not in the same field as Defendant. For instance, Blue Spike provides pre-release tracking technology for audio, like new music artists' singles, that may be sent to various radio stations for promotional purposes. This type of tracking helps an artist know whether a radio station improperly posts the song

for sale rather than simply playing it as a "demo only." Blue Spike also has other service offerings at bluesspike.com.

12.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

13.     Moskowitz is an inventor on more than 110 patents, including forensic watermarking, signal abstracts, data security, software watermarks, service license keys, deep packet inspection, license code for authorized software and bandwidth securitization.

14.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA marked the application "classified" under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

15.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of

digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

16.     Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

17.     Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

## THE ACCUSED PRODUCTS AND SERVICES

18.     Defendant makes, uses, offers for sale and sells in the U.S. products, systems, and/or services that infringe the Patents-in-Suit, including, but not limited to, the following examples:

19.     Defendant makes, uses, offers for sale and sells its DISH Fiber Internet products and services ("DISH Fiber Internet Accused Products and Services").



**Figure 1** – Screen shot of Defendant offering of DISH Fiber Internet of the DISH Business webpage, as viewed at https://www.dish.com/business/fiber/.

20.    Defendant's DISH Fiber Internet Accused Products and Services use methods, devices, and systems taught by Blue Spike's six (6) asserted patents below:

Count 1 – U.S. Patent RE 44,222E1.

Count 2 – US Patent RE 44,307.

Count 3 – U.S. Patent 7, 287,275B2.

Count 4 – U.S. Patent 8,473,746B2.

Count 5 – U.S. Patent 7,159,116B2.

Count 6 – U.S. Patent 8,538,011B2.

21.    Defendant also makes, uses, offers for sale and sells its DISH TV systems, products, and services ("DISH TV Accused Products and Services," and collectively with the DISH Fiber Internet Accused Products and Services, "Accused Products and Services").



**Figure 2** – Screen shot of Defendant offering of DISH TV Accused Products and Services, as viewed at https://www.dish.com/ (*See* Exhibit C).

22.    Defendant's DISH TV Accused Products and Services use methods, devices, and systems taught by Blue Spike's eleven (11) asserted patents below:

Count 7 – U.S. Patent RE 44,222E1,

Count 8 – U.S. Patent RE 44,307,

Count 9 – U.S. Patent 7, 287, 275B2,

Count 10 – U.S. Patent 8,224,705

Count 11 – U.S. Patent 7,475,246,

Count 12 – U.S. Patent 8,739,295,

Count 13 – U.S. Patent 9,021,602,

Count 14 – U.S. Patent 9,104,842.

Count 15 – U.S. Patent 9,934,408.

Count 16 – U.S. Patent 7,15,9116B2.

Count 17 – U.S. Patent 8,538,011B2.

23.    Defendant has not sought or obtained a license for any of Blue Spike's patented technologies. This creates a competitive disadvantage to other Companies, like Apple, Acer, Dell, IBM, Samsung, and Sony to name some large companies, who recognized the value and novelty Blue Spike's patents provide to society.

24.    Each count of patent infringement contained herein is accompanied by a representative claim. *See*, *Atlas IP LLC v. P. Gas and Electric Co*., 15-CV-05469-EDL, 2016 WL 1719545, at *5 (N.D. Cal. Mar. 9, 2016) ("*Iqbal* and *Twombly* only require Plaintiff to state a plausible claim for relief, which can be satisfied by adequately pleading infringement of one claim.").

## COUNT 1:
## INFRINGEMENT OF U.S. PATENT U.S. Patent RE 44,222E1

25.    Blue Spike incorporates by reference the paragraphs above and below.

26.    The '222 Patent is presumed valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

27.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

28.    The specification of the '222 Patent explains both the problem in the prior art and the benefit of the computer-implemented invention.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

29.    Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '222 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the DISH Fiber Internet Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

30.    Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '222 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '222 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant controls its DISH Fiber Internet Accused Products and Services; offers it for sale and sells the DISH Fiber Internet Accused Products and Services, also it has partnered with numerous resellers to offer for sale and sell the DISH Fiber Internet Accused Products and Services in the United States, it generates revenue from sales of its DISH Fiber Internet Accused Products and Services in the United States to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the DISH Fiber Internet Accused Products and Services.

31.    For instance, the DISH Fiber Internet Accused Products and Services infringe claim 1 of the '222 Patent which recites:

> 1. A process for transmitting a stream of data, comprising:
> receiving a stream of data;
> organizing the stream of data into a plurality of packets;

> generating a packet watermark associated with the stream
> of data wherein the packet watermark indicates the integrity
> of at least one of the plurality of packets;
> combining the packet watermark with each of the plurality
> of packets to form watermarked packets; and transmitting
> at least one of the watermarked packets across a network.

32.   Defendant provides DISH Fiber Internet Accused Products and Services instituting systems and processes for transmitting streams of data, wherein one or more routers provision data between routers, switches and consumer end-point devices (such as computers).

33.   Defendant provides DISH Fiber Internet Accused Products and Services including Managed Wi-Fi instituting routers, wherein the one or more routers organize the stream of data in to a plurality of packets.   Also, one or more routers generate a packet watermark that signifies priority or Quality of Service (QoS) associated with the packets.

34.   Defendant's Managed Wi-Fi allows one or more routers to receive a stream of data packets from one or more consumer end-points and from other routers. The packets are classified and differentiated based on the bits watermarked into the packet's IP header. Packets marked constitute watermarked packets, wherein other bits define the quality of service assigned to the packets.

35.   Defendant not only designed the DISH Fiber Internet Accused Products and Services to practice the claimed invention, but also instructed its customers to use the DISH Fiber Internet Accused Products and Services in an infringing way.

36.   Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive. "A finding of

infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

37.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '222 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of one or more claims of the '222 Patent. Such products include, without limitation, one or more of the DISH Fiber Internet Accused Products and Services. By making, using, importing offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '222 Patent under 35 U.S.C. § 271.

38.    Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

39.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

40.   Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

41.   "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc*., Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

42.   It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's products and services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, Case 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

43.    Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

44.    Defendant induces end users of the DISH Fiber Internet Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access the Internet via its router system.

45.    Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

46.    Defendant had knowledge of the '222 Patent at least as early as the service of this complaint, and has known since then that the DISH Fiber Internet Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the DISH Fiber Internet Accused Products and Services, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '222 Patent by actively inducing infringement.

**Contributory Infringement.**

47.    Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

48.    The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

49.    Defendant contributed to the infringement by providing the DISH Fiber Internet Accused Products and Services to its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

50.    The accused functionality in the Defendant's DISH Fiber Internet Accused Product has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses.  *See id.* at 1321.

51.    Defendant is liable as contributory infringer of one or more claims of the '222 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

52.   Defendant's acts of infringement of the '222 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount described in the prayer below. Defendant's infringement of Blue Spike's exclusive rights under the '222 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

53.   On information and belief, the infringement of the '222 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '222 Patent, including but not limited to at least one or more of the following events:

   a.       The filing of Blue Spike's complaint against Defendant in the Eastern District of Texas.

   b.       In the course of its due diligence and freedom to operate analyses.

   c.       News coverage of Blue Spike's enforcement of this patent against other infringers.

   d.       Blog postings about Defendant being a serial infringer of patent rights.

   e.       Part of the due diligence investigation performed for SEC filings.

54.   On information and belief, Defendant has had at least had constructive notice of the '222 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at

*3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

55.     A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 2:

### INFRINGEMENT OF U.S. PATENT US Patent RE 44,307

56.     Blue Spike incorporates by reference the paragraphs above and below.

57.     The '307 Patent is presumed valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

58.     These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

59.     The specification of the '307 Patent explains both the problem in the prior art and the benefit of the computer-implemented invention.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

60. Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '307 Patent—directly, indirectly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the DISH Fiber Internet Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

61. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '307 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '307 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant imports the DISH Fiber Internet Accused Products and Services into the United States; offers for sale and sells the DISH Fiber Internet Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the DISH Fiber Internet Accused Products and Services in the United States, generates revenue from sales of the DISH Fiber Internet Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the DISH Fiber Internet Accused Products and Services.

62. For instance, the DISH Fiber Internet Accused Products and Services infringe claim 1 of the '307 Patent which recites:

> d. A process for provisioning a stream of data, comprising:

receiving a stream of data;
organizing the stream of data into a packet flow comprising a plurality of packets;
generating, using a processor, a packet watermark associated with the packet flow wherein the packet watermark enables discrimination between packet flows;
combining, using a processor, the packet watermark with each of the plurality of packets to form watermarked packets; and
provisioning at least one of the watermarked packets across a network.

63.    Defendant provides DISH Fiber Internet Accused Products and Services instituting systems and processes for transmitting streams of data, wherein one or more routers provision data between routers, switches and consumer end-point devices (such as computers).

64.    Defendant provides DISH Fiber Internet Accused Products and Services including Managed Wi-Fi instituting routers, wherein the one or more routers organize the stream of data in to a plurality of packets.   Also, one or more routers generate a packet watermark that signifies priority or Quality of Service (QoS) associated with the packets.

65.    Defendant's Managed Wi-Fi allows one or more routers to receive a stream of data packets from one or more consumer end-points and from other routers. The packets are classified and differentiated based on the bits watermarked into the packet's IP header. Packets marked constitute watermarked packets, wherein other bits define the quality of service assigned to the packets.

66.    Defendant designed the DISH Fiber Internet Accused Products and Services to practice the claimed invention and instructed its customers to use the DISH Fiber Internet Accused Products and Services in an infringing way.

67.   Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although evidence of infringement may be circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

68.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '307 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '307 Patent. By making, using, importing offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '307 Patent under 35 U.S.C. § 271.

69.   Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

70.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

71.    Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

72.    "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

73.    It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's DISH Fiber Internet Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

74.   Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

75.   Defendant induces end users of the DISH Fiber Internet Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

76.   Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (*e.g.,* advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

77.   Defendant had knowledge of the '307 Patent at least as early as the service of this complaint, and has known since then that the DISH Fiber Internet Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '307 Patent by actively inducing infringement.

**Contributory Infringement.**

78.   Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

79.   The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

80.   Defendant contributed to the infringement by providing Products and/or Services to its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

81.   The accused functionality in the Defendant's DISH Fiber Internet Accused Products and Services have no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses.  *See id*. At 1321.

82.   Defendant is liable as contributory infringer of one or more claims of the '307 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

83.    Defendant's acts of infringement of the '307 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '307 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

84.    On information and belief, the infringement of the '307 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '307 Patent, including but not limited to at least one or more of the following

   a.       The filing of Blue Spike's complaint against Defendant.

   b.       In the course of its due diligence and freedom to operate analyses.

   c.       News coverage of Blue Spike's enforcement of this patent against other infringers.

85.    On information and belief, Defendant has had at least had constructive notice of the '307 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

86.    A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 3:
## INFRINGEMENT OF U.S. PATENT NO. 7, 287, 275B2

87.    Blue Spike incorporates by reference the paragraphs above and below.

88.    The '275 Patent is presumed valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

89.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

90.    The specification of the '275 Patent explains both the problem in the prior art and the benefit of the computer-implemented invention.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

91.    Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '275 Patent—directly, indirectly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without

limitation, one or more of the DISH Fiber Internet Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

92.   Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '275 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '275 Patent. *See Joy Techs., Inc. v. Flakt, Inc*., 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant imports the DISH Fiber Internet Accused Products and Services into the United States; offers for sale and sells the DISH Fiber Internet Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the DISH Fiber Internet Accused Products and Services in the United States, generates revenue from sales of the DISH Fiber Internet Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the Accused Products and Services.

93.   For instance, the DISH Fiber Internet Accused Products and Services infringe claim 1 of the '275 Patent which recites:

> d.   A method for transmitting a stream of data, comprising:
> receiving a stream of data;
> organizing the stream of data into a plurality of packets;
> generating a packet watermark associated with the stream of data wherein the packet watermark enables identification of at least one of the plurality of packets;
> combining the packet watermark with each of the plurality of packets to form watermarked packets; and
> transmitting at least one of the watermarked packets across a network.

94.     Defendant provides DISH Fiber Internet Accused Products and Services instituting systems and processes for transmitting streams of data, wherein one or more routers provision data between routers, switches and consumer end-point devices (such as computers).

95.     Defendant provides DISH Fiber Internet Accused Products and Services including Managed Wi-Fi instituting routers, wherein the one or more routers organize the stream of data in to a plurality of packets.   Also, one or more routers generate a packet watermark that signifies priority or Quality of Service (QoS) associated with the packets.

96.     Defendant's Managed Wi-Fi allows one or more routers to receive a stream of data packets from one or more consumer end-points and from other routers. The packets are classified and differentiated based on the bits watermarked into the packet's IP header. Packets marked constitute watermarked packets, wherein other bits define the quality of service assigned to the packets.

97.     Defendant designed the DISH Fiber Internet Accused Products and Services to practice the claimed invention and instructed its customers to use the DISH Fiber Internet Accused Products and Services in an infringing way.

98.     Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although evidence of infringement may be circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

99.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '275 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '275 Patent. Such services include, without limitation, one or more of the DISH Fiber Internet Accused Products and Services. By making, using, importing offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '275 Patent under 35 U.S.C. § 271.

100.   Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

101.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs.*

*Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

102. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

103. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

104.  It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's DISH Fiber Internet Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

105. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

106.  Defendant induces end users of the DISH Fiber Internet Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

107.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (*e.g.,* advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

108.  Defendant had knowledge of the '275 Patent at least as early as the service of this complaint, and has known since then that the DISH Fiber Internet Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '275 Patent by actively inducing infringement.

**Contributory Infringement.**

109.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

110.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended

the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

111.  Defendant contributed to the infringement by providing the DISH Fiber Internet Accused Products and Services to its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

112.   The accused functionality in the Defendant's DISH Fiber Internet Accused Products and Services have no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses.  *See id*. At 1321.

113.  Defendant is liable as contributory infringer of one or more claims of the '275 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

114.  Defendant's acts of infringement of the '275 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '275

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

115.  On information and belief, the infringement of the '275 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '275 Patent, including but not limited to at least one or more of the following

     a.      The filing of Blue Spike's complaint against Defendant in the Eastern District of Texas.

     b.      In the course of its due diligence and freedom to operate analyses.

     c.      News coverage of Blue Spike's enforcement of this patent against other infringers.

     d.      Part of the due diligence investigation performed for SEC filings.

116.  On information and belief, Defendant has had at least had constructive notice of the '275 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

117.  A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111

(E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 4:
## INFRINGEMENT OF U.S. PATENT 8,473,746B2

118.  Blue Spike incorporates by reference the paragraphs above and below.

119.  The '746 Patent is presumed valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

120.   These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

121.   The specification of the '746 Patent explains both the problem in the prior art and the benefit of the computer-implemented invention.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

122.  Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '746 Patent—directly, indirectly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the DISH Fiber Internet Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

123. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '746 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '746 Patent. *See Joy Techs., Inc. v. Flakt, Inc*., 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant imports the DISH Fiber Internet Accused Products and Services into the United States; offers for sale and sells the DISH Fiber Internet Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the DISH Fiber Internet Accused Products and Services in the United States, generates revenue from sales of the DISH Fiber Internet Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the DISH Fiber Internet Accused Products and Services.

124.  For instance, the DISH Fiber Internet Accused Products and Services infringe claim 1 of the '746 Patent which recites:

> d.  A router for routing packets, comprising:
> structure for receiving a transmission comprising a data packet, its associated watermark, and its associated bandwidth rights certificate,
> wherein said router comprises a processor; and
> wherein said router is configured to analyze the transmission and to check the authenticity of the transmission using said processor.

125.  Defendant provides DISH Fiber Internet Accused Products and Services instituting systems and processes for transmitting streams of data, wherein one or more routers

provision data between routers, switches and consumer end-point devices (such as computers).

126.  Defendant provides DISH Fiber Internet Accused Products and Services including Managed Wi-Fi instituting routers, wherein the one or more routers organize the stream of data in to a plurality of packets.   Also, one or more routers generate a packet watermark that signifies priority or Quality of Service (QoS) associated with the packets.

127.  Defendant's Managed Wi-Fi allows one or more routers to receive a stream of data packets from one or more consumer end-points and from other routers. The packets are classified and differentiated based on the bits watermarked into the packet's IP header. Packets marked constitute watermarked packets, wherein other bits define the quality of service assigned to the packets.

128.  Defendant designed the DISH Fiber Internet Accused Products and Services to practice the claimed invention and instructed its customers to use the DISH Fiber Internet Accused Products and Services in an infringing way.

129.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although evidence of infringement may be circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

130. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United States,

by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '746 Patent. Such services include, without limitation, one or more of the DISH Fiber Internet Accused Products and Services. By making, using, importing offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '746 Patent under 35 U.S.C. § 271.

131.  Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

132.  Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

133. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545

U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

134. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

135.  It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's DISH Fiber Internet Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

136. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

137.  Defendant induces end users of the DISH Fiber Internet Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

138.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts

based on circumstantial evidence of inducement (*e.g.,* advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

139.  Defendant had knowledge of the '746 Patent at least as early as the service of this complaint, and has known since then that the DISH Fiber Internet Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '746 Patent by actively inducing infringement.

**Contributory Infringement.**

140.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

141.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

142.  Defendant contributed to the infringement by providing the DISH Fiber Internet Accused Products and Services to its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

143.   The accused functionality in the Defendant's DISH Fiber Internet Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses.  *See id*. At 1321.

144.   Defendant is liable as contributory infringer of one or more claims of the '746 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

145.   Defendant's acts of infringement of the '746 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '746 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

146.   On information and belief, the infringement of the '746 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '746 Patent, including but not limited to at least one or more of the following

　　　a.　　　The filing of Blue Spike's complaint against Defendant.

　　　b.　　　In the course of its due diligence and freedom to operate analyses.

c.       News coverage of Blue Spike's enforcement of this patent against other infringers.

d.       Part of the due diligence investigation performed for SEC filings.

147.   On information and belief, Defendant has had at least had constructive notice of the '746 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

148.   A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 5:
## INFRINGEMENT OF U.S. PATENT U.S. PATENT 7,159,116B2

149.   Blue Spike incorporates by reference the paragraphs above and below.

150.  The '116 Patent is presumed valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

151.  These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

152.  The specification of the '116 Patent explains both the problem in the prior art and the benefit of the computer-implemented invention.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

153.  Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '116 Patent—directly, indirectly, contributorily, or by inducement—by selling services and devices that embody the patented invention, including, without limitation, one or more of the DISH Fiber Internet Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

154. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '116 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '116 Patent. *See Joy Techs., Inc. v. Flakt, Inc*., 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the DISH Fiber Internet Accused Products and Services and has partnered with numerous resellers to offer for sale and sell the DISH Fiber Internet Accused Products and Services in the United States, generates revenue from sales of the DISH Fiber Internet Accused Products

and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the DISH Fiber Internet Accused Products and Services.

155.  For instance, the DISH Fiber Internet Accused Products and Services infringe claim 14 of the '116 Patent which recites:

> d.   A device for conducting a trusted transaction between at least two parties who have agreed to transact, comprising:
> means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties, a unique identification of the transaction, a unique identification of value added information to be transacted, a unique identification of a value adding component;
> a steganographic cipher for generating said unique identification information, wherein the steganographic cipher is governed by at least the following elements: a predetermined key, a predetermined message, and a predetermined carrier signal; and
> a means for verifying an agreement to transact between the parties.

156.  Defendant provides DISH Fiber Internet Accused Products and Services instituting trusted transaction between at least two parties who have agreed to transact.

157.  Defendant designed the DISH Fiber Internet Accused Products and Services to practice the claimed invention and instructed its customers to use the DISH Fiber Internet Accused Products and Services in an infringing way.

158.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although evidence of infringement may be circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

159. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '116 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '116 Patent. Such services include, without limitation, one or more of the DISH Fiber Internet Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '116 Patent under 35 U.S.C. § 271.

160. Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

161. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs.*

*Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

162. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

163. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

164.  It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's DISH Fiber Internet Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

165. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

166.  Defendant induces end users of the DISH Fiber Internet Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

167.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (*e.g.,* advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

168.  Defendant had knowledge of the '116 Patent at least as early as the service of this complaint, and has known since then that the DISH Fiber Internet Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '116 Patent by actively inducing infringement.

**Contributory Infringement.**

169.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

170.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended

the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

171.  Defendant contributed to the infringement by providing the DISH Fiber Internet Accused Products and Services to its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

172.  The accused functionality in the Defendant's DISH Fiber Internet Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses.  *See id.* At 1321.

173.  Defendant is liable as contributory infringer of one or more claims of the '116 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

174.  Defendant's acts of infringement of the '116 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '116

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

175.  On information and belief, the infringement of the '116 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '116 Patent, including but not limited to at least one or more of the following

      a.      The filing of Blue Spike's complaint against Defendant.

      b.      In the course of its due diligence and freedom to operate analyses.

      c.      News coverage of Blue Spike's enforcement of this patent against other infringers.

      d.      Part of the due diligence investigation performed for SEC filings.

176.  On information and belief, Defendant has had at least had constructive notice of the '116 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

177.  A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including

whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

**COUNT 6:**
**INFRINGEMENT OF U.S. PATENT 8,538,011**

178.   Blue Spike incorporates by reference the paragraphs above and below.

179.   The '011 Patent is presumed valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

180.   These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

181.    The specification of the '011 Patent explains both the problem in the prior art and the benefit of the computer-implemented invention.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

182.  Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '011 Patent—directly, indirectly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the DISH Fiber Internet Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

183. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '011 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '011 Patent. *See Joy Techs., Inc. v. Flakt, Inc*., 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant sells the DISH Fiber Internet Accused Products and Services with numerous resellers to offer for sale and sell the DISH Fiber Internet Accused Products and Services in the United States, generates revenue from sales of the DISH Fiber Internet Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the DISH Fiber Internet Accused Products and Services.

184. For instance, the DISH Fiber Internet Accused Products and Services infringe claim 35 of the '011 Patent which recites:

> A device for conducting trusted transactions between at least two parties, comprising:
> a steganographic cipher;
> a controller for receiving input data or outputting output data; and
> at least one input/output connection,
> wherein the device has a device identification code stored in the device;
> an analog to digital converter; and
> a steganographically ciphered software application;
> wherein said steganographically ciphered software application has been subject to a steganographic cipher for serialization;
> wherein said steganographic cipher receives said output data, steganographically ciphering said output data using a key, to define steganographically ciphered output data, and transmits said steganographically ciphered output data to said at least one input/output connection;

> wherein the device is configured to steganographically cipher both value-added information and at least one value-added component associated with the value-added information.

185.  Defendant provides DISH Fiber Internet Accused Products and Services instituting trusted transaction between at least two parties who have agreed to transact.

186.  Defendant designed the DISH Fiber Internet Accused Products and Services to practice the claimed invention and instructed its customers to use the DISH Fiber Internet Accused Products and Services in an infringing way.

187.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although evidence of infringement may be circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

188.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '011 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '011 Patent. Such services include, without limitation, one or more of the DISH Fiber Internet Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '011 Patent under 35 U.S.C. § 271.

189.  Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

190.  Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

191. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

192. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

193. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's DISH Fiber Internet Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

194. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

195. Defendant induces end users of the DISH Fiber Internet Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

196. Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (*e.g.,* advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

197.  Defendant had knowledge of the '011 Patent at least as early as the service of this complaint, and has known since then that the DISH Fiber Internet Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '011 Patent by actively inducing infringement.

**Contributory Infringement.**

198.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

199.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

200.  Defendant contributed to the infringement by providing the DISH Fiber Internet Accused Products and Services to its partners and resellers, who offer for sale and sell the DISH Fiber Internet Accused Products and Services.

201.  The accused functionality in the Defendant's DISH Fiber Internet Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or

component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses. *See id*. at 1321.

202.  Defendant is liable as contributory infringer of one or more claims of the '011 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

203.  Defendant's acts of infringement of the '011 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '011 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

204.  On information and belief, the infringement of the '011 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '011 Patent, including but not limited to at least one or more of the following

a.       The filing of Blue Spike's complaint against Defendant.

b.       In the course of its due diligence and freedom to operate analyses.

c.       News coverage of Blue Spike's enforcement of this patent against other infringers.

d.       Part of the due diligence investigation performed for SEC filings.

205.  On information and belief, Defendant has had at least had constructive notice of the '011 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

206.  A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 7:
## INFRINGEMENT OF U.S. PATENT RE44,222E1

207.    Blue Spike incorporates by reference the paragraphs above and below.

208.    The '222 Patent is presumed valid, enforceable, and was duly and legally issue by the United States Patent and Trademark Office.

209.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

210.    In the specification of the '222 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

211.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '222 Patent—directly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the Spectrum Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

212. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '222 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '222 Patent. *See Joy Techs., Inc. v. Flakt, Inc*., 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the Spectrum Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the Spectrum Accused Products and Services in the United States, generates revenue from sales of the Spectrum Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the Spectrum Accused Products and Services.

213.  For instance, the Spectrum Accused Products and Services infringe claim 12 of the '222 Patent which recites:

>    12. A system for provisioning content, comprising:
>
>    a processor to receive content and to organize the content into a plurality of packets;
>
>    a generator to generate at least one packet watermark associated with the content;
>
>    a packager to combine the generated packet watermark with at least one of the plurality of packets to form watermarked packets; and
>
>    a transmitter to transmit at least one of the watermarked packets across a network.

214.  Defendant provides DISH TV, which is a system for provisioning content, that contains a processor to both receive content and to organize content into a plurality of packets; it generates at least one packet watermark associated with the content.

215.  Defendant provides via DISH TV a packager to combine the generated packet watermark with at least one of the plurality of packets to form watermarked packets; and a transmitter to transmit at least one of the watermarked packets across a network.

216.  Defendant not only designed the Spectrum Accused Products and Services to practice the claimed invention, but also instructed its customers to use the Spectrum Accused Products and Services in an infringing way.

217.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive. "A finding of

infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

218. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '222 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '222 Patent. Such services include, without limitation, one or more of the Spectrum Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '222 Patent under 35 U.S.C. § 271.

219. Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

220. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See* Fuji *Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir.

2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

221. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

222. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc*., Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

223.  It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Spectrum Accused Products and Services. See *In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

224. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

225.  Defendant induces end users of the Spectrum Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

226.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

227.  Defendant had knowledge of the '222 Patent at least as early as the service of this complaint, and has known since then that the Spectrum Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '222 Patent by actively inducing infringement.

**Contributory Infringement.**

228.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

229.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended

the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

230.  Defendant contributed to the infringement by providing the Spectrum Accused Products and Services to its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

231.  The accused functionality in the Defendant's Spectrum Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses. *See id*. at 1321.

232.  Defendant is liable as contributory infringer of one or more claims of the '222 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

233.  Defendant's acts of infringement of the '222 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '222

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

234.  On information and belief, the infringement of the '222 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '222 Patent, including but not limited to at least one or more of the following

      a.      The filing of Blue Spike's complaint against Defendant.

      b.      In the course of its due diligence and freedom to operate analyses.

      c.      News coverage of Blue Spike's enforcement of this patent against other infringers.

      d.      Part of the due diligence investigation performed for SEC filings.

235.  On information and belief, Defendant has had at least had constructive notice of the '222 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

236.  A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including

whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 8:

## INFRINGEMENT OF U.S. PATENT US Patent RE 44,307E1

237.  Blue Spike incorporates by reference the paragraphs above and below.

238.  The '307 Patent is presumed valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office.

239.   These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

240.   The specification of the '307 Patent explains both the problem in the prior art and the benefit of the computer-implemented invention.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

241.  Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '307 Patent—directly, indirectly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the Spectrum Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

242. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '307 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '307 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the Spectrum Accused Products and Services and has partnered with numerous resellers to offer for sale and sell the Spectrum Accused Products and Services in the United States, generates revenue from sales of the Spectrum Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the Spectrum Accused Products and Services.

243. For instance, the Spectrum Accused Products and Services infringe claim 1 of the '307 Patent which recites:

> 1. A process for provisioning a stream of data, comprising:
> receiving a stream of data;
> organizing the stream of data into a packet flow comprising a plurality of packets;
> generating, using a processor, a packet watermark associated with the packet flow wherein the packet watermark enables discrimination between packet flows;
> combining, using a processor, the packet watermark with each of the plurality of packets to form watermarked packets; and
> provisioning at least one of the watermarked packets across a network.
> .

244. Defendant provides DISH TV that is a process for provisioning a stream of data, organizing it, generating a packet watermark with a processor and provisioning watermarked packets across a network.

245.  Defendant designed the Spectrum Accused Products and Services to practice the claimed invention and instructed its customers to use the Spectrum Accused Products and Services in an infringing way.

246.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although evidence of infringement may be circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

247.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '307 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '307 Patent. Such services include, without limitation, one or more of the Spectrum Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '307 Patent under 35 U.S.C. § 271.

248.  Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires

a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

249. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

250. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

251. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

252. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Spectrum Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323,

1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

253.  Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

254.  Defendant induces end users of the Spectrum Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming.

255.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (*e.g.,* advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

256.  Defendant had knowledge of the '307 Patent at least as early as the service of this complaint, and has known since then that the Spectrum Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '307 Patent by actively inducing infringement.

**Contributory Infringement.**

257.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

258.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

259.  Defendant contributed to the infringement by providing the Spectrum Accused Products and Services to its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

260.  The accused functionality in the Defendant's Spectrum Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses.  *See id*. at 1321.

261.  Defendant is liable as contributory infringer of one or more claims of the '307 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

262.  Defendant's acts of infringement of the '307 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '307 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

263.  On information and belief, the infringement of the '307 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '307 Patent, including but not limited to at least one or more of the following:

      a.      The filing of Blue Spike's complaint against Defendant.

      b.      In the course of its due diligence and freedom to operate analyses.

      c.      News coverage of Blue Spike's enforcement of this patent against other infringers.

      d.      Part of the due diligence investigation performed for SEC filings.

264.  On information and belief, Defendant has had at least had constructive notice of the '307 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting

"Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

265.   A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

**COUNT 9:**
**INFRINGEMENT OF U.S. PATENT 7,287,275B2**

266.   Blue Spike incorporates by reference the paragraphs above and below.

267.   The '275 Patent is presumed valid, enforceable, and was duly and legally issue by the United States Patent and Trademark Office.

268.   These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

269.   In the specification of the '275 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

270.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '275 Patent—directly, contributorily, or

by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the Spectrum Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

271.    Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '275 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '275 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the Spectrum Accused Products and Services via numerous resellers to offer for sale and sell the Spectrum Accused Products and Services in the United States, generates revenue from sales of the Spectrum Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the Spectrum Accused Products and Services.

272.  For instance, the Spectrum Accused Products and Services infringe claim 1 of the '275 Patent which recites:

> A method for transmitting a stream of data, comprising:
>
> receiving a stream of data;
>
> organizing the stream of data into a plurality of packets;
>
> generating a packet watermark associated with the stream of data wherein the packet watermark enables identification of at least one of the plurality of packets;
>
> combining the packet watermark with each of the plurality of packets to form watermarked packets; and

transmitting at least one of the watermarked packets across
a network.

273.    Defendant provides DISH TV, which is a system for transmitting a stream of data,
that obtains a stream of data that it organizes into a plurality of packets, o both receive
content and to organize content into a plurality of packets; it generates at least one packet
watermark associated with the content before transmitting it across a network.

274.    Defendant not only designed the Spectrum Accused Products and Services to
practice the claimed invention, but also instructed its customers to use the Spectrum
Accused Products and Services in an infringing way.

275.    Circumstantial evidence is not only sufficient, but may also be more certain,
satisfying and persuasive than direct evidence. Although the evidence of infringement is
circumstantial, that does not make it any less credible or persuasive. "A finding of
infringement can rest on as little as one instance of the claimed method being performed
during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

276.    Defendant has been and now is indirectly infringing by way of inducing
infringement by others and/or contributing to the infringement by others of the '275
Patent in the State of Texas, in this judicial district, and elsewhere in the United States,
by, among other things, making, using, offering for sale, and/or selling, without license or
authority, services for use in systems that fall within the scope of one or more claims of
the '275 Patent. Such services include, without limitation, one or more of the Spectrum
Accused Products and Services. By making, using, offering for sale, and/or selling such
services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement
of the '275 Patent under 35 U.S.C. § 271.

277.    Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

278.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

279.    Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

280.    "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc*., Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

281.    It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Spectrum Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, Case 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

282.    Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

283.    Defendant induces end users of the Spectrum Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

284.    Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

285.    Defendant had knowledge of the '275 Patent at least as early as the service of this complaint, and has known since then that the Spectrum Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '275 Patent by actively inducing infringement.

**Contributory Infringement.**

286.    Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

287.    The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

288.    Defendant contributed to the infringement by providing the Spectrum Accused Products and Services to its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

289.    The accused functionality in the Defendant's Spectrum Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An

"infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses. *See id*. at 1321.

290.    Defendant is liable as contributory infringer of one or more claims of the '275 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

291.    Defendant's acts of infringement of the '275 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '275 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

292.    On information and belief, the infringement of the '275 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '275 Patent, including but not limited to at least one or more of the following

    a.      The filing of Blue Spike's complaint against Defendant.

    b.      In the course of its due diligence and freedom to operate analyses.

    c.      News coverage of Blue Spike's enforcement of this patent against other infringers.

    d.      Part of the due diligence investigation performed by for SEC filings.

293.    On information and belief, Defendant has had at least had constructive notice of the '275 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

294.    A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 10:
## INFRINGEMENT OF U.S. PATENT 8,224,705

295.    Blue Spike incorporates by reference the paragraphs above and below.

296.    The '705 Patent is presumed valid, enforceable, and was duly and legally issue by the United States Patent and Trademark Office.

297.     These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

298.     In the specification of the '705 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

299.     Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '705 Patent—directly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the Spectrum Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

300.     Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '705 Patent and/or directing, controlling, and obtaining benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '705 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the Spectrum Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the Spectrum Accused Products and Services in the United States, generates revenue from sales of the Spectrum Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the Spectrum Accused Products and Services.

301.    The Spectrum Accused Products and Services infringe claims of the '705 Patent

such as claim 19 which teaches

>    19. A two-way communication system for selling at
>    least one of an item and/or a service said system
>    comprising:
>
>    an exchange system;
>
>    a communicator to establish a communication link
>    between the exchange system and a purchasing
>    system, whereby said two-way communication
>    system can receive a request to purchase a
>    selected item;
>
>    wherein said exchange system is configured to:
>
>    transmit a stream of data comprising a plurality of
>    packets using a packet watermark protocol that
>    generates a packet watermark associated with the
>    stream of data wherein the packet watermark
>    enables identification of at least one of the
>    plurality of packets, and combine the packet
>    watermark with each of the plurality of packets to
>    form watermarked packets; and
>
>    wherein the transmitted stream is for at least one of the
>    following:
>
>    a display for advertising, for sale, good and/or
>    services;
>
>    a transaction module for determining a purchase value
>    for a selected item; and
>
>    a delivery module for sending an instruction to deliver
>    the selected item.

302.    Defendant provides DISH TV, which contains a system to purchase products "on

demand" that practice Blue Spike's Claim 19 of the '705 patent, among others.

303.    Defendant not only designed the Spectrum Accused Products and Services to

practice the claimed invention, but also instructed its customers to use the Spectrum

Accused Products and Services in an infringing way.

304.    Circumstantial evidence is not only sufficient, but may also be more certain,

satisfying and persuasive than direct evidence. Although the evidence of infringement is

circumstantial, that does not make it any less credible or persuasive. "A finding of

infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

305.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '705 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '705 Patent. Such services include, without limitation, one or more of the Spectrum Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '705 Patent under 35 U.S.C. § 271.

306.   Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh*, 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

307.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir.

2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

308.     Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

309.     "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

310.     It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Spectrum Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, Case 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

311.     Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

312.    Defendant induces end users of the Spectrum Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

313.    Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

314.    Defendant had knowledge of the '705 Patent at least as early as the service of this complaint, and has known since then that the Spectrum Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '705 Patent by actively inducing infringement.

**Contributory Infringement.**

315.    Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

316.    The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor

intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

317.    Defendant contributed to the infringement by providing the Spectrum Accused Products and Services to its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

318.    The accused functionality in the Defendant's Spectrum Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses. *See id*. at 1321.

319.    Defendant is liable as contributory infringer of one or more claims of the '705 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

320.    Defendant's acts of infringement of the '705 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '705

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

321.    On information and belief, the infringement of the '705 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '705 Patent, including but not limited to at least one or more of the following

      a.         The filing of Blue Spike's complaint against Defendant.

      b.         In the course of its due diligence and freedom to operate analyses.

      c.         News coverage of Blue Spike's enforcement of this patent against other infringers.

      d.         Part of the due diligence investigation performed for SEC filings.

322.    On information and belief, Defendant has had at least had constructive notice of the '705 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

323.    A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including

whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 11:
## INFRINGEMENT OF U.S. PATENT 7,475,246

324.    Blue Spike incorporates by reference the paragraphs above and below.

325.    The '246 Patent is presumed valid, enforceable, and was duly and legally issue by the United States Patent and Trademark Office.

326.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

327.    In the specification of the '246 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

328.     Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '246 Patent—directly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the Spectrum Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

329.    Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '246 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '246 Patent. *See Joy Techs., Inc. v. Flakt, Inc*., 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant the Spectrum Accused Products and Services into the United States; offers for sale and sells the Spectrum Accused Products and Services via numerous resellers to offer for sale and sell the Spectrum Accused Products and Services in the United States, generates revenue from sales of the Spectrum Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the Spectrum Accused Products and Services.

330.    The Spectrum Accused Products and Services infringe claims of the '246 Patent such as claim 3 which teaches:

> 3. A local content server system (LCS) for creating a secure environment for digital content, comprising:
> a) a communications port for connecting the system via a network to at least one Secure Electronic Content Distributor (SECD), said SECD storing a plurality of data sets, receiving a request to transfer at least one content data set, and transmitting the at least one content data set in a secured transmission;
> b) an interface to permit the LCS to communicate with one or more Satellite Units (SU) connected to the system through the interface, said SUs receiving and transmitting digital content; and
> c) a rewritable storage medium whereby content received from an SECD and from an SU is stored and retrieved;
> d) a domain processor that imposes rules and procedures for content being transferred between the LCS and the SECD and between the LCS and the SU; and

e) a programmable address module programmed with an identification code uniquely associated with the LCS;

said domain processor permitting the LCS to deliver digital content to and receive digital content from an SU that is connected to the LCS's interface, provided the LCS first determines that the digital content being delivered to the SU is authorized for use by the SU or that the digital content being received is authorized for use by the LCS, and if the digital content is not authorized for use, accepting the digital content at a predetermined quality level, said predetermined quality level having been set for legacy content,

and said domain processor permitting the LCS to receive digital content from an SECD that is connected to the LCS's communication port, provided the LCS first determines that digital content being received is authorized for use by the LCS and if the digital content is not authorized for use by the LCS, accepting the digital content at a predetermined quality level, said predetermined quality level having been set for legacy content.

331.    Defendant provides DISH TV, which contains a local content server system (LCS) for creating a secure environment for digital content that practices Blue Spike's Claim 3 of the '246 patent, among others.

332.    Defendant not only designed the Spectrum Accused Products and Services to practice the claimed invention, but also instructed its customers to use the Spectrum Accused Products and Services in an infringing way.

333.    Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

334.  Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '246 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '246 Patent. Such services include, without limitation, one or more of the Spectrum Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '246 Patent under 35 U.S.C. § 271.

335.  Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

336.  Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs.*

*Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

337.   Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

338.   "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc*., Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

339.   It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Spectrum Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, Case 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

340.   Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

341.    Defendant induces end users of the Spectrum Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

342.    Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

343.    Defendant had knowledge of the '246 Patent at least as early as the service of this complaint, and has known since then that the Spectrum Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '246 Patent by actively inducing infringement.

**Contributory Infringement.**

344.    Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

345.    The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor

intended the article to be used to infringe another's patent, and so may justly be held

liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545

U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

346.    Defendant contributed to the infringement by providing the Spectrum Accused

Products and Services to its partners and resellers, who offer for sale and sell the

Spectrum Accused Products and Services.

347.    The accused functionality in the Defendant's Spectrum Accused Service has no

substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d

1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a

contributory infringement claim applies to an infringing feature or component). An

"infringing feature" of a service does not escape liability simply because the service as a

whole has other non-infringing uses.  *See id*. at 1321.

348.    Defendant is liable as contributory infringer of one or more claims of the '246

Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-

145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*,

2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not

required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

349.    Defendant's acts of infringement of the '246 Patent have caused damage to Blue

Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35

U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '246

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

350.    On information and belief, the infringement of the '246 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '246 Patent, including but not limited to at least one or more of the following

   a.       The filing of Blue Spike's complaint against Defendant.

   b.       In the course of its due diligence and freedom to operate analyses.

   c.       News coverage of Blue Spike's enforcement of this patent against other infringers.

   d.       Part of the due diligence investigation performed for SEC filings.

351.    On information and belief, Defendant has had at least had constructive notice of the '246 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

352.    A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including

whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

**COUNT 12:**
**INFRINGEMENT OF U.S. PATENT 8,739,295**

353.    Blue Spike incorporates by reference the paragraphs above and below.

354.    The '295 Patent is presumed valid, enforceable, and was duly and legally issue by the United States Patent and Trademark Office.

355.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

356.    In the specification of the '295 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

357.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '295 Patent—directly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the Spectrum Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

358. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '295 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '295 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the Spectrum Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the Spectrum Accused Products and Services in the United States, generates revenue from sales of the Spectrum Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the Spectrum Accused Products and Services.

359.  For instance, the Spectrum Accused Products and Services infringe claim 1 of the '295 Patent which recites:

> A local content server system (LCS), comprising:
> an LCS communications port;
> an LCS storage unit for storing digital data;
> an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS, thereby defining a first LCS domain; and
> a programmable address module which can be programmed with an LCS identification code uniquely associated with said LCS domain processor;
> wherein said LCS stores in said LCS storage unit said plurality of rules for processing a data set;
> wherein said LCS is configured to receive via said LCS communications port a first data set that includes data defining first content;
> wherein said LCS is configured to determine whether said first content belongs to a different LCS domain than said first LCS domain;
> wherein said LCS is configured to exclude from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain;

> wherein said LCS is configured to use said LCS domain processor to determine, upon receipt by said LCS of said first data set via said LCS communications port, from inspection of said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;
>
> wherein said LCS is configured to use said first data set status value to determine which of a set of rules to apply to process said first data set;
>
> wherein said LCS is configured to determine, at least in part from rights associated with a user identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy; and
>
> wherein said LCS is configured to transmit said first content at the determined quality level in response to said prompt.

360.  Defendant provides DISH TV, which contains an LCS server for creating a secure environment for digital content that practices Blue Spike's Claim 1 of the '295 patent, among others.

361.  Defendant not only designed the Spectrum Accused Products and Services to practice the claimed invention, but also instructed its customers to use the Spectrum Accused Products and Services in an infringing way.

362.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

363. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '295 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '295 Patent. Such services include, without limitation, one or more of the Spectrum Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '295 Patent under 35 U.S.C. § 271.

364. Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

365. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs.*

*Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

366. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

367. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

368.  It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Spectrum Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, Case 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

369. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

370.  Defendant induces end users of the Spectrum Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

371.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

372.  Defendant had knowledge of the '295 Patent at least as early as the service of this complaint, and has known since then that the Spectrum Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '295 Patent by actively inducing infringement.

**Contributory Infringement.**

373.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

374.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended

the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

375. Defendant contributed to the infringement by providing the Spectrum Accused Products and Services to its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

376. The accused functionality in the Defendant's Spectrum Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses. *See id.* at 1321.

377. Defendant is liable as contributory infringer of one or more claims of the '295 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages**

378. Defendant's acts of infringement of the '295 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '295

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

379.  On information and belief, the infringement of the '295 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '295 Patent, including but not limited to at least one or more of the following

      a.      The filing of Blue Spike's complaint against Defendant.

      b.      In the course of its due diligence and freedom to operate analyses.

      c.      News coverage of Blue Spike's enforcement of this patent against other infringers.

      d.      Part of the due diligence investigation performed for SEC filings.

380.  On information and belief, Defendant has had at least had constructive notice of the '295 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

381.  A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including

whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 13:
## INFRINGEMENT OF U.S. PATENT 9,021,602

382.    Blue Spike incorporates by reference the paragraphs above and below.

383.    The '602 Patent is presumed valid, enforceable, and was duly and legally issue by the United States Patent and Trademark Office.

384.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

385.    In the specification of the '602 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

386.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '602 Patent—directly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the Spectrum Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

387. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '602 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '602 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the Spectrum Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the Spectrum Accused Products and Services in the United States, generates revenue from sales of the Spectrum Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the Spectrum Accused Products and Services.

388.  For instance, the Spectrum Accused Products and Services infringe claim 1 of the '602 Patent which recites:

> A local content server system (LCS), comprising:
> an LCS communications port;
> an LCS storage unit for storing digital data;
> an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS, thereby defining a first LCS domain; and
> a programmable address module which can be programmed with an LCS identification code uniquely associated with said LCS domain processor;
> wherein said LCS stores in said LCS storage unit said plurality of rules for processing a data set;
> wherein said LCS is configured to receive via said LCS communications port a first data set that includes data defining first content;
> wherein said LCS is configured to determine whether said first content belongs to a different LCS domain than said first LCS domain;
> wherein said LCS is configured to exclude from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain;

wherein said LCS is configured to use said LCS domain processor to determine, upon receipt by said LCS of said first data set via said LCS communications port, from inspection of said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;

wherein said LCS is configured to use said first data set status value to determine which of a set of rules to apply to process said first data set;

wherein said LCS is configured to determine, at least in part from rights associated with a user identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy; and

wherein said LCS is configured to transmit said first content at the determined quality level in response to said prompt.

389.  Defendant provides DISH TV, which contains an LCS server for creating a secure environment for digital content that practices Blue Spike's Claim 1 of the '602 patent, among others.

390.  Defendant not only designed the Spectrum Accused Products and Services to practice the claimed invention, but also instructed its customers to use the Spectrum Accused Products and Services in an infringing way.

391.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

392. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '602 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '602 Patent. Such services include, without limitation, one or more of the Spectrum Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '602 Patent under 35 U.S.C. § 271.

393.  Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

394. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs.*

*Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

395. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

396. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

397.  It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Spectrum Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, Case 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

398. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

399.  Defendant induces end users of the Spectrum Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

400.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

401.  Defendant had knowledge of the '602 Patent at least as early as the service of this complaint, and has known since then that the Spectrum Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '602 Patent by actively inducing infringement.

**Contributory Infringement.**

402.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

403.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended

the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

404. Defendant contributed to the infringement by providing the Spectrum Accused Products and Services to its partners and resellers, who offer for sale and sell the Spectrum Accused Products and Services.

405. The accused functionality in the Defendant's Spectrum Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses. *See id*. at 1321.

406. Defendant is liable as contributory infringer of one or more claims of the '602 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

407. Defendant's acts of infringement of the '602 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '602

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

408.  On information and belief, the infringement of the '602 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '602 Patent, including but not limited to at least one or more of the following

      a.      The filing of Blue Spike's complaint against Defendant.

      b.      In the course of its due diligence and freedom to operate analyses.

      c.      News coverage of Blue Spike's enforcement of this patent against other infringers.

      d.      Part of the due diligence investigation performed for SEC filings.

409.  On information and belief, Defendant has had at least had constructive notice of the '602 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

410.  A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including

whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 14:
## INFRINGEMENT OF U.S. PATENT 9,104,842

411.   Blue Spike incorporates by reference the paragraphs above and below.

412.   The '842 Patent is presumed valid, enforceable, and was duly and legally issue by the United States Patent and Trademark Office.

413.   These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

414.   In the specification of the '842 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

415.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '842 Patent—directly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the Spectrum Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

416. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '842 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '842 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the Spectrum Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the Spectrum Accused Products and Services in the United States, generates revenue from sales of the Spectrum Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the Spectrum Accused Products and Services.

417.  For instance, the Spectrum Accused Products and Services infringe claim 1 of the '842 Patent which recites:

> A local content server system (LCS), comprising:
> an LCS communications port;
> an LCS storage unit for storing digital data;
> an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS, thereby defining a first LCS domain; and
> a programmable address module which can be programmed with an LCS identification code uniquely associated with said LCS domain processor;
> wherein said LCS stores in said LCS storage unit said plurality of rules for processing a data set;
> wherein said LCS is configured to receive via said LCS communications port a first data set that includes data defining first content;
> wherein said LCS is configured to determine whether said first content belongs to a different LCS domain than said first LCS domain;
> wherein said LCS is configured to exclude from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain;

wherein said LCS is configured to use said LCS domain processor to determine, upon receipt by said LCS of said first data set via said LCS communications port, from inspection of said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;

wherein said LCS is configured to use said first data set status value to determine which of a set of rules to apply to process said first data set;

wherein said LCS is configured to determine, at least in part from rights associated with a user identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy; and

wherein said LCS is configured to transmit said first content at the determined quality level in response to said prompt.

418.  Defendant provides DISH TV, which contains an LCS server for creating a secure environment for digital content that practices Blue Spike's Claim 1 of the '842 patent, among others.

419.  Defendant not only designed the Spectrum Accused Products and Services to practice the claimed invention, but also instructed its customers to use the Spectrum Accused Products and Services in an infringing way.

420.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

421. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '842 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '842 Patent. Such services include, without limitation, one or more of the DISH TV Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '842 Patent under 35 U.S.C. § 271.

422. Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

423. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs.*

*Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

424. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

425. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc*., Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

426.  It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's DISH TV Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, Case 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

427. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the DISH TV Accused Products and Services.

428.  Defendant induces end users of the DISH TV Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

429.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

430.  Defendant had knowledge of the '842 Patent at least as early as the service of this complaint, and has known since then that the DISH TV Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '842 Patent by actively inducing infringement.

**Contributory Infringement.**

431.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

432.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended

the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

433.  Defendant contributed to the infringement by providing the DISH TV Accused Products and Services to its partners and resellers, who offer for sale and sell the DISH TV Accused Products and Services.

434.  The accused functionality in the Defendant's DISH TV Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses. *See id*. at 1321.

435.  Defendant is liable as contributory infringer of one or more claims of the '842 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

436.  Defendant's acts of infringement of the '842 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '842

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is

no adequate remedy at law, warranting an injunction from the Court.

437.  On information and belief, the infringement of the '842 Patent by Defendant has

been willful and continues to be willful. Defendant had knowledge of the '842 Patent,

including but not limited to at least one or more of the following

> a.      The filing of Blue Spike's complaint against Defendant.

> b.      In the course of its due diligence and freedom to operate analyses.

> c.      News coverage of Blue Spike's enforcement of this patent against other

infringers.

> d.      Part of the due diligence investigation performed for SEC filings.

438.  On information and belief, Defendant has had at least had constructive notice of the

'842 Patent by operation of law. Plaintiff believes the evidence provided shows

Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove

egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness,

without a specific showing of egregiousness, are sufficient to withstand a motion to

dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at

*3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting

"Defendants' argument seems to conflate the standards for pleading willful infringement

with the standards for proving willful infringement.").

439.  A jury is capable, and indeed required, to examine facts that plausibly support a

finding of willful infringement. Here, the facts provide "a sufficient predicate" to support

a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111

(E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including

whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 15:
## INFRINGEMENT OF U.S. PATENT 9,934,408

440.    Blue Spike incorporates by reference the paragraphs above and below.

441.    The '408 Patent is presumed valid, enforceable, and was duly and legally issue by the United States Patent and Trademark Office.

442.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

443.    In the specification of the '408 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

444.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '408 Patent—directly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the DISH TV Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

445. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '408 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '408 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the DISH TV Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the DISH TV Accused Products and Services in the United States, generates revenue from sales of the DISH TV Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the DISH TV Accused Products and Services.

446.  For instance, the DISH TV Accused Products and Services infringe claim 1 of the '408 Patent which recites:

> A local content server system (LCS), comprising:
> an LCS communications port;
> an LCS storage unit for storing digital data;
> an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS, thereby defining a first LCS domain; and
> a programmable address module which can be programmed with an LCS identification code uniquely associated with said LCS domain processor;
> wherein said LCS stores in said LCS storage unit said plurality of rules for processing a data set;
> wherein said LCS is configured to receive via said LCS communications port a first data set that includes data defining first content;
> wherein said LCS is configured to determine whether said first content belongs to a different LCS domain than said first LCS domain;
> wherein said LCS is configured to exclude from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain;

wherein said LCS is configured to use said LCS domain processor to determine, upon receipt by said LCS of said first data set via said LCS communications port, from inspection of said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;

wherein said LCS is configured to use said first data set status value to determine which of a set of rules to apply to process said first data set;

wherein said LCS is configured to determine, at least in part from rights associated with a user identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy; and

wherein said LCS is configured to transmit said first content at the determined quality level in response to said prompt.

447.  Defendant provides DISH TV, which contains an LCS server for creating a secure environment for digital content that practices Blue Spike's Claim 1 of the '408 patent, among others.

448.  Defendant not only designed the DISH TV Accused Products and Services to practice the claimed invention, but also instructed its customers to use the DISH TV Accused Products and Services in an infringing way.

449.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

450. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '408 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '408 Patent. Such services include, without limitation, one or more of the DISH TV Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '408 Patent under 35 U.S.C. § 271.

451.  Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

452. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs.*

*Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

453. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

454. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

455.  It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's DISH TV Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, Case 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

456. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the DISH TV Accused Products and Services.

457.  Defendant induces end users of the DISH TV Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

458.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

459.  Defendant had knowledge of the '408 Patent at least as early as the service of this complaint, and has known since then that the DISH TV Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '408 Patent by actively inducing infringement.

**Contributory Infringement.**

460.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

461.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended

the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

462. Defendant contributed to the infringement by providing the DISH TV Accused Products and Services to its partners and resellers, who offer for sale and sell the DISH TV Accused Products and Services.

463. The accused functionality in the Defendant's DISH TV Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses. *See id.* at 1321.

464. Defendant is liable as contributory infringer of one or more claims of the '408 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

465. Defendant's acts of infringement of the '408 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '408

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

466.  On information and belief, the infringement of the '408 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '408 Patent, including but not limited to at least one or more of the following

> a.      The filing of Blue Spike's complaint against Defendant.

> b.      In the course of its due diligence and freedom to operate analyses.

> c.      News coverage of Blue Spike's enforcement of this patent against other infringers.

> d.      Part of the due diligence investigation performed for SEC filings.

467.  On information and belief, Defendant has had at least had constructive notice of the '408 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

468.  A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including

whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 16:
## INFRINGEMENT OF U.S. PATENT 7,15,9116B2

469.    Blue Spike incorporates by reference the paragraphs above and below.

470.    The '116 Patent is presumed valid, enforceable, and was duly and legally issue by the United States Patent and Trademark Office.

471.    These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

472.    In the specification of the '116 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

473.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '116 Patent—directly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the DISH TV Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

474. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '116 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '116 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the DISH TV Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the DISH TV Accused Products and Services in the United States, generates revenue from sales of the DISH TV Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the DISH TV Accused Products and Services.

475.  For instance, the DISH TV Accused Products and Services infringe claim 1 of the '116 Patent which recites:

> A local content server system (LCS), comprising:
> an LCS communications port;
> an LCS storage unit for storing digital data;
> an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS, thereby defining a first LCS domain; and
> a programmable address module which can be programmed with an LCS identification code uniquely associated with said LCS domain processor;
> wherein said LCS stores in said LCS storage unit said plurality of rules for processing a data set;
> wherein said LCS is configured to receive via said LCS communications port a first data set that includes data defining first content;
> wherein said LCS is configured to determine whether said first content belongs to a different LCS domain than said first LCS domain;
> wherein said LCS is configured to exclude from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain;

wherein said LCS is configured to use said LCS domain processor to determine, upon receipt by said LCS of said first data set via said LCS communications port, from inspection of said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;

wherein said LCS is configured to use said first data set status value to determine which of a set of rules to apply to process said first data set;

wherein said LCS is configured to determine, at least in part from rights associated with a user identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy; and

wherein said LCS is configured to transmit said first content at the determined quality level in response to said prompt.

476. Defendant provides DISH TV, which contains an LCS server for creating a secure environment for digital content that practices Blue Spike's Claim 1 of the '116 patent, among others.

477. Defendant not only designed the DISH TV Accused Products and Services to practice the claimed invention, but also instructed its customers to use the DISH TV Accused Products and Services in an infringing way.

478. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

479. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '116 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '116 Patent. Such services include, without limitation, one or more of the DISH TV Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '116 Patent under 35 U.S.C. § 271.

480.  Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

481. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs.*

*Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

482. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

483. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

484.  It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's DISH TV Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, Case 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

485. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the DISH TV Accused Products and Services.

486.  Defendant induces end users of the DISH TV Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

487.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

488.  Defendant had knowledge of the '116 Patent at least as early as the service of this complaint, and has known since then that the DISH TV Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '116 Patent by actively inducing infringement.

**Contributory Infringement.**

489.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

490.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended

the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

491. Defendant contributed to the infringement by providing the DISH TV Accused Products and Services to its partners and resellers, who offer for sale and sell the DISH TV Accused Products and Services.

492. The accused functionality in the Defendant's DISH TV Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses. *See id*. at 1321.

493. Defendant is liable as contributory infringer of one or more claims of the '116 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

494. Defendant's acts of infringement of the '116 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '116

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

495.  On information and belief, the infringement of the '116 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '116 Patent, including but not limited to at least one or more of the following

      a.        The filing of Blue Spike's complaint against Defendant.

      b.        In the course of its due diligence and freedom to operate analyses.

      c.        News coverage of Blue Spike's enforcement of this patent against other infringers.

      d.        Part of the due diligence investigation performed by for SEC filings.

496.  On information and belief, Defendant has had at least had constructive notice of the '116 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

497.  A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including

whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## COUNT 17:
## INFRINGEMENT OF U.S. PATENT 8,538,011B2

498.   Blue Spike incorporates by reference the paragraphs above and below.

499.   The '011 Patent is presumed valid, enforceable, and was duly and legally issue by the United States Patent and Trademark Office.

500.   These claims are directed to a non-abstract improvement in computer functionality, rather than a method of organizing human activity or an idea of itself.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2017-1452 (Fed. Cir. Feb. 14, 2018).

501.   In the specification of the '011 Patent both the problem in the prior art and the benefit of the computer-implemented invention is explained.  This difference is not "well known" or "conventional." A human cannot perform these tasks.

502.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '011 Patent—directly, contributorily, or by inducement—by making, using, offering for sale, or selling services and devices that embody the patented invention, including, without limitation, one or more of the DISH TV Accused Products and Services, in violation of 35 U.S.C. § 271.

**Direct Infringement.**

503. Defendant has been and now is directly infringing by, among other things, practicing all the elements of the '011 Patent and/or directing, controlling, and obtaining

benefits from its subsidiaries, partners, distributors, and retailers practicing all the steps of the '011 Patent. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993) ("A method claim is directly infringed only by one practicing the patented method."); see also 35 U.S.C. § 271 (2006). Specifically, Defendant offers for sale and sells the DISH TV Accused Products and Services via its own online store, has partnered with numerous resellers to offer for sale and sell the DISH TV Accused Products and Services in the United States, generates revenue from sales of the DISH TV Accused Products and Services to U.S. customers via such outlets, and has attended trade shows in the United States where it has demonstrated the DISH TV Accused Products and Services.

504.  For instance, the DISH TV Accused Products and Services infringe claim 1 of the '011 Patent which recites:

> A local content server system (LCS), comprising:
> an LCS communications port;
> an LCS storage unit for storing digital data;
> an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS, thereby defining a first LCS domain; and
> a programmable address module which can be programmed with an LCS identification code uniquely associated with said LCS domain processor;
> wherein said LCS stores in said LCS storage unit said plurality of rules for processing a data set;
> wherein said LCS is configured to receive via said LCS communications port a first data set that includes data defining first content;
> wherein said LCS is configured to determine whether said first content belongs to a different LCS domain than said first LCS domain;
> wherein said LCS is configured to exclude from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain;

wherein said LCS is configured to use said LCS domain processor to determine, upon receipt by said LCS of said first data set via said LCS communications port, from inspection of said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;

wherein said LCS is configured to use said first data set status value to determine which of a set of rules to apply to process said first data set;

wherein said LCS is configured to determine, at least in part from rights associated with a user identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy; and

wherein said LCS is configured to transmit said first content at the determined quality level in response to said prompt.

505.  Defendant provides DISH TV, which contains an LCS server for creating a secure environment for digital content that practices Blue Spike's Claim 1 of the '011 patent, among others.

506.  Defendant not only designed the DISH TV Accused Products and Services to practice the claimed invention, but also instructed its customers to use the DISH TV Accused Products and Services in an infringing way.

507.  Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive. "A finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d at 775.

**Indirect Infringement.**

508. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '011 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, offering for sale, and/or selling, without license or authority, services for use in systems that fall within the scope of one or more claims of the '011 Patent. Such services include, without limitation, one or more of the DISH TV Accused Products and Services. By making, using, offering for sale, and/or selling such services, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '011 Patent under 35 U.S.C. § 271.

509. Defendant actively induces infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306* (Fed.Cir.2006) (en banc in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

510. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs.*

*Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

511. Defendant took active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused service to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

512. "[A] pre-suit knowledge requirement for induced infringement would lead to absurd results." *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016).

513.  It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's DISH TV Accused Products and Services. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, Case 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011).

**Induced Infringement.**

514. Defendant induces infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the DISH TV Accused Products and Services.

515.  Defendant induces end users of the DISH TV Accused Products and Services to infringe. Defendant induces its customers to infringe at the very least by providing information on how to access infringing streaming content.

516.  Defendant also provides customers other incentives to use the infringing services, such as through discounted offers. *See* Exhibit C; *see also Power Integrations v. Fairchild Semiconductor*, 843 F.3d at 1335 ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement (e.g., advertisements, user manuals) directed to a class of direct infringers (e.g., customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

517.  Defendant had knowledge of the '011 Patent at least as early as the service of this complaint, and has known since then that the DISH TV Accused Products and Services infringe the Patents-in-Suit. Nevertheless, Defendant has continued to induce its customers and partners to infringe. It does so through its instructions accompanying the accused device, its technical support, demonstrations and tutorials. Thus, Defendant is liable for infringement of one or more claims of the '011 Patent by actively inducing infringement.

**Contributory Infringement.**

518.  Defendant is also a contributory infringer.  In addition to proving an act of direct infringement, plaintiff contends that defendant knew that the combination for which its components were especially made was both patented and infringing.

519.  The contributory infringement doctrine was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended

the article to be used to infringe another's patent, and so may justly be held liable for that infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781(2005).

520.  Defendant contributed to the infringement by providing the DISH TV Accused Products and Services to its partners and resellers, who offer for sale and sell the DISH TV Accused Products and Services.

521.  The accused functionality in the Defendant's DISH TV Accused Service has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301 (Fed. Cir. (Cal.) 2009) (holding that the substantial non-infringing uses element of a contributory infringement claim applies to an infringing feature or component). An "infringing feature" of a service does not escape liability simply because the service as a whole has other non-infringing uses.  *See id*. at 1321.

522.  Defendant is liable as contributory infringer of one or more claims of the '011 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement.");

**Plaintiff Suffered Damages.**

523.  Defendant's acts of infringement of the '011 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '011

Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

524.  On information and belief, the infringement of the '011 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '011 Patent, including but not limited to at least one or more of the following

     a.         The filing of Blue Spike's complaint against Defendant.

     b.         In the course of its due diligence and freedom to operate analyses.

     c.         News coverage of Blue Spike's enforcement of this patent against other infringers.

     d.         Part of the due diligence investigation performed for SEC filings.

525.  On information and belief, Defendant has had at least had constructive notice of the '011 Patent by operation of law. Plaintiff believes the evidence provided shows Defendant's willful infringement is egregious. Even so, Plaintiff is not required to prove egregiousness in its pleadings. "Even after Halo, broader allegations of willfulness, without a specific showing of egregiousness, are sufficient to withstand a motion to dismiss." *Shire ViroPharma Inc. v. CSL Behring LLC*, CV 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018) (denying a defendant's motion to dismiss and noting "Defendants' argument seems to conflate the standards for pleading willful infringement with the standards for proving willful infringement.").

526.  A jury is capable, and indeed required, to examine facts that plausibly support a finding of willful infringement. Here, the facts provide "a sufficient predicate" to support a jury's finding of willfulness. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (listing a series of nine-factors utilized in the Federal Circuit, including

whether the infringer knew of the other's patent protection and investigated, the infringers behavior, defendant's size and financial condition, closeness of the case, duration of misconduct, and remedial action taken by defendant once it was notified of infringement, as factors that are "a sufficient predicate" of fact to support a jury's finding of willfulness).

## REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)     enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit in the amount of reasonable royalty based on revenue of accused product and service sales of more than $65 million and more than a total of $260 million if damages are trebled;

(b)     enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)     enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)     enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,


Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

Ian Ramage
  California Bar No. 224881
  iramage@ghiplaw.com
**GARTEISER HONEA, P.C.**
795 Folsom Street, Floor 1
San Francisco, California 94107
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

***Counsel for Blue Spike, LLC***

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

/s/ Randall Garteiser